# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO
(Honorable US District Court Judge Aida M. Delgado-Colon)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff <br> v. <br><br> **Victor Miguel Soto-Santana** <br><br> Defendant. | Criminal Case No. 17-055 (ADC) <br><br> **SENTENCING MEMORANDUM** <br><br> DATE: 03/22/2017 <br> TIME: 3:00 p.m. |

**TO THE HONORABLE COURT:**

Victor Miguel Soto-Santana, by and through his attorney, Hector J Dauhajre, submits this Sentencing Memorandum pursuant to the now-advisory provisions of the Federal Sentencing Guidelines.

### PROCEDURAL HISTORY

Mr. Soto-Santana was charged with a one count Indictment for illegal reentry, in violation of Title 8, United States Code, Section 1326(a).

On February 10, 2017, Mr. Soto-Santana was arraigned and pled not guilty to the sole charge. He has been detained pending further proceedings since the arrest. On March 22, 2017, Mr. Soto-Santana will change his plea of not guilty to one of guilty as to count one of the Indictment. On that same date, he will get sentenced accordingly.

On March 13, 2017 an expedited PSR was filed at docket 16 in accordance with court's order.

**SENTENCING MEMORANDUM**

Mr. Soto-Santana is 31 years old. He was born and raised in the town of Bani, Dominican Republic. He comes from a very poor family. Mr. Soto-Santana's mother was a homemaker and his father worked in agriculture. With the income that his father provided only a daily meal was possible for the family. He remembers all the nights that he had to go to bed being hungry. In school, the story was the same since no meals were provided by the public education system.

When Mr. Soto-Santana was 8 years old, his father decided to leave the country to move to the continental United States looking for a better paying job. He lived in the Bronx in the state of New York and worked in a food warehouse. Mr. Soto-Santana's father started sending money back home to his wife. At that time the financial condition of Mr. Soto-Santana's family improved significantly. Three meals a day were possible thanks to the big effort and sacrifice of Mr. Soto-Santana's father.

At age 16, Mr. Soto-Santana left home and moved with his father in New York. He had to quit school and could not complete second year of high school. He needed to earn money to help his mother and 2 siblings. He wanted to join his father with the family financial responsibilities. Mr. Soto-Santana found a job in a food storage warehouse with the help of his father. Immediately he started sending money back home and also helped his father with the rent and groceries.

When Mr. Soto-Santana was 18 years old, his father broke up with his mother and stopped sending money to her. It became Mr. Soto-Santana sole responsibility to help his family back home. This situation meant less money for him to cover for living expenses but helping his mother and 2 siblings was a must.

At age 19, Mr. Soto-Santana started a romantic relationship with Ms. Jeorgelina Cruz from which they had two children. All of a sudden, Mr. Soto-Santana had a family of 5. He had to provide financial support for Ms. Cruz, son

Geomi, daughter Alexa and Ms. Cruz' one year old twin daughters. Although Ms. Cruz' twin daughters were not his, he covered and supported them as his own. Ms. Cruz decided to stay home raising and educating the children. At that time Mr. Soto-Santana's financial troubles started. He ended up separated from Ms. Cruz and paying extra rent for his place. Mr. Soto-Santana was paying support for his two children as well as covering for his living expenses. But leaving his mother without any support was not an option for him. Although sending a lesser amount, some help was sent to his mother in the Dominican Republic.

In early 2016, Mr. Soto-Santana was deported to the Dominican Republic. His children, Geomi (10 years old) and Alexa (7 years old) were kept out of financial help from Mr. Soto-Santana. He started working in a pawn shop in his hometown Bani making approximately $108 a month. He was living at his mother's place and could only provide for them not his children.

Mr. Soto-Santana was frustrated when he cannot help his children. His frustration brought about the worse and wrong decision he could have taken. Desperation made him put his life in danger by attempting to enter Puerto Rico in a "yola" boat, let alone the legal consequences that it caused. He was only thinking in getting a better paying job here in Puerto Rico. A job where he could send support to his mother but most importantly to his two children. Since 2014, Mr. Soto-Santana could not provide any financial support to them.

Mr. Soto-Santana made a serious mistake when he chose to illegally attempt to enter the United States. He admits his guilt and has vowed not to reoffend. No matter how struggling his financial condition could get, being in prison makes it impossible to help his family. He will help them by working hard in the Dominican Republic.

## ACCEPTANCE OF RESPONSIBILITY

Mr. Soto-Santana accepts responsibility for his illegal act charged in count 1 of the indictment. He knows he broke the law by attempting to enter illegally to the United States. He has expressed remorse for what he has done and realizes that his

3

wrong decision has only separated him more from his family. Mr. Soto-Santana will not commit the same mistake ever again.

## 18 U.S.C. § 3553 IMPOSITION OF A SENTENCE FACTORS

The primary sentencing mandate of 18 U.S.C. § 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purpose of punishment, justice, deterrence, incapacitation, and rehabilitation. Moreover, the Court is directed to impose a sentence that is "sufficient but not more than necessary." The court in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristic of the defendant;

(2) the need for the sentence imposed;

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kind of sentences available;

(4) the sentencing range established by the Sentencing Commission.

Mr. Soto-Santana broke the law when he illegally attempted to enter the United States. Notwithstanding, his sole motive for his travel was to provide financial support for his two children that live in New York. Not being able to see them since 2014 is horrible, but not providing them with financial support drove him crazy. He wanted to do what his father did for his family in the past. Mr. Soto-

4

Santana did not want his children to go through all the hardships he suffered when he was a kid.

In the instant case, Mr. Soto-Santana's motive to enter the United States makes his case significantly different from an ordinary illegal reentry case. He intends to return to the Dominican Republic to find the best available paying job upon his release. His children and mother's luck are in his hands. Being in prison does not help them at all.

Mr. Soto-Santana recognizes and accepts that he has to get in contact with Geomi and Alexa without being present in the United States, no matter what.

Mr. Soto-Santana has already spent two months in custody of the United States. He has learned his lesson and incarceration has already had a profound effect on him. Mr. Soto Santana has no intention of returning to the United States. He intends to immediately return to live with his mother and find a job. Mr. Soto-Santana recognizes and accepts that he cannot support his family by working in the United States. His sole desire is to return to the stable, law abiding life he was living in Bani before he came involved in the instant offense.

Under 18 U.S.C. §3553(a) and United States v. Booker, 543 U.S. 220 (2005), the Guidelines are advisory. Mr. Soto-Santana's PSR establishes a criminal history category of III based on three previous convictions. His first previous conviction involves a DUI ("Driving under the Influence") conduct. The sentence imposed was from 48 hours to 6 months of imprisonment. There are no supporting documents that indicate the exact sentence that Mr. Soto-Santana got and served. Two points were added for this offense. Any conduct that involves DUI is a serious offense. Mr. Soto-Santana does not intends to undermine the seriousness of his wrong conduct. But he submits to the court that 2 points of criminal history for the offense would over-represent the seriousness of the criminal conduct. Mr. Soto-Santana's conviction does not involve neither a crime of violence nor a direct victim. As an illustration,

under Puerto Rico state law, a first conviction for a DUI conduct does not involve imprisonment and is considered a misdemeanor. The offender would be compelled to participate in a program intended for rehabilitation and create consciousness about the danger of a DUI. There is no prison time for a first offender.

Mr. Soto-Santana's second conviction involving possession of a controlled substance resulted in 3 points of criminal history according to the PSR. The sentence pronounced was of 9 to 23 months of imprisonment to be followed by 24 months of probation. As with his previous conviction, there are not any supporting documents that indicate the exact sentence ordered and served for this offense. If Mr. Soto-Santana was sentenced for less than a year for it, 2 points of criminal history would have been added instead of 3.

Mr. Soto-Santana acknowledges application note 2 of guideline section 4A1.2 that supports the criminal history calculations in the PSR. Notwithstanding, Mr. Soto-Santana submits to the court that based on the above mentioned circumstances a criminal history category of III, as determined in the PSR, over-represents the seriousness of past criminal conduct and would result in a sentence greater than necessary for him. A criminal history category II is more adequate and should apply in this case. It will not improperly inflate the sentence nor over-represent the seriousness of Mr. Soto-Santana's past criminal conduct.

**SENTENCING RECOMMENDATION**

Mr. Soto-Santana admits his wrongdoing in this case. This is Mr. Soto-Santana first time before a federal court facing criminal charges. He did not know about the consequences nor seriousness of his offense. His sole motive to illegally attempt to re-enter the United States was to get a job and provide support for his children.

Once Mr. Soto-Santana finishes serving sentence, he will be deported by immigration authorities. This process of deportation would result in approximately 3 months of additional detention.

Mr. Soto-Santana respectfully requests that this Court take into account the requirements of 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary", by addressing his motives, the need to provide just punishment and the need to avoid sentence disparities. The defense respectfully requests that this Court consider the sentence in light of <u>Booker</u> and its progeny, as well as Mr. Soto-Santana's financial needs and desperate behavior to support his children. Also, we urge the court to consider the additional time of detention that Mr. Soto-Santana will face after serving sentence for deportation proceedings (approximately 3 months). In so doing, it is requested that this court sentence Mr. Soto-Santana to time served.

In San Juan, Puerto Rico, on March 21, 2017.

**RESPECTFULLY SUBMITTED**

**I HEREBY CERTIFY** that on this same day the present motion was electronically filed with the Clerk of the court and the attorneys of record through the CM/ECF electronic filing system.

s:/Héctor J. Dauhajre

HECTOR J DAUHAJRE, ESQ.
USDC-PR 227,702

PMB 229 B5
Tabonuco St. Ste. 216
Guaynabo, PR 00968-3029

Tel. (787) 607-0614
E-mail: hectordauhajre@gmail.com